UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HEATHER E. BRIGGS,                 )
                                   )   No. CV-07-0278-CI
            Plaintiff,             )
                                   )   ORDER GRANTING DEFENDANT'S
v.                                 )   MOTION FOR SUMMARY JUDGMENT
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security,                          )
                                   )
            Defendant.             )
                                   )
                                   )

     BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec.
18, 25).  Attorney Lana Cece Glenn represents Plaintiff; Special
Assistant United States Attorney Terrye Erin Shea represents
Defendant.  The parties have consented to proceed before a magistrate
judge.  (Ct. Rec. 7.)  After reviewing the administrative record and
briefs filed by the parties, the court **GRANTS** Defendant's Motion for
Summary Judgment.  (**Ct. Rec. 25.**)  Plaintiff's Motion for Summary
Judgment **(Ct. Rec. 18)** is **DENIED**.

### JURISDICTION

     On March 30, 2001, Plaintiff Heather Briggs (Plaintiff)
protectively filed for Supplemental Security Income. (Tr. 164-170.)
Upon initial application, Plaintiff alleged disability due to problems
with vision, back pain, and depression, with an alleged onset date of
August 1, 1997. (Tr. 164, 167.)  Benefits were denied initially and

on reconsideration. (Tr. 128-131, 134-136.)  Plaintiff requested a hearing before an administrative law judge (ALJ), and hearings were held on September 19, 2002 and March 20, 2003. (Tr. 41-97, 100-125.) After Plaintiff appealed an unfavorable decision, the case was remanded pursuant to an order by the United States District Court for the Eastern District of Washington. (Tr. 554-555.)  At a hearing on June 7, 2006, Plaintiff, who was present and represented by counsel, psychological expert R. Thomas McKnight, Ph.D., and vocational expert Daniel R. McKinney, testified. (Tr. 783-855.)  ALJ Mary Reed denied benefits and the Appeals Council denied review. (Tr. 501-504, 533.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  Plaintiff was 19 years old at the time of filing, 28 at the relevant hearing, and had a high-school education. (Tr. 532, 815-816.)  She testified she had past work experience assisting in a veterinary clinic, filing in an office, and working as an aide in a retirement home.  (Tr. 59-60, 817.)  Since Plaintiff suffered a back injury several years earlier, prolonged sitting or standing cause pain in her neck and shoulders and limited range of motion. (Tr. 819.) She lives with her partner, and her two children, aged 13-months and eight years.  (Tr. 826, 829.) Plaintiff testified she experiences headaches, dizziness, problems with grasping, tingling, asthma, pain her right knee, arm and wrist, and insomnia. (Tr. 822-825, 828-830.)  She stated she becomes tearful daily or every other day.  (Tr. 831.)  She watches television and plays with her children.  (Tr. 831.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

**ADMINISTRATIVE DECISION**

The ALJ incorporated her prior decision by reference. (Tr. 521, 523, referring to Tr. 17-33.) At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 1997. (Tr. 523.) (Although Plaintiff worked, it did not rise to level of substantial gainful activity. Tr. 18.) At steps two and three, ALJ Reed found Plaintiff had the severe impairments of asthma and personality and depressive disorders (Tr. 523), but these impairments alone or in combination did not meet or equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 524.) The ALJ found Plaintiff's statements "not entirely credible." (Tr. 526.)

At steps four and five, the ALJ determined Plaintiff has no past relevant work, but other jobs exist that a person with Plaintiff's limitations could perform. (Tr. 532-533.) Based on vocational expert testimony, she found Plaintiff was capable of performing work as a hand packer, assembler, and product checker. (Tr. 533.) Therefore, Plaintiff was not found "disabled" as defined in the Social Security Act at any time through the date of the ALJ decision. (Tr. 533.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1    It is the role of the trier of fact, not this court, to resolve
2 conflicts in evidence. *Richardson,* 402 U.S. at 400.    If evidence
3 supports more than one rational interpretation, the court may not
4 substitute its judgment for that of the Commissioner. *Tackett*, 180
5 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
6 If there is substantial evidence to support the administrative
7 findings, or if there is conflicting evidence that will support a
8 finding of either disability or non-disability, the finding of the
9 Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-
10 1230 (9th Cir. 1987).    Nevertheless, a decision supported by
11 substantial evidence will still be set aside if the proper legal
12 standards were not applied in weighing the evidence and making the
13 decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d
14 432, 433 (9th Cir. 1988).

15                                **ISSUES**

16    The question is whether the ALJ's decision is supported by
17 substantial evidence and free of legal error.    Specifically, Plaintiff
18 argues the ALJ erred in her evaluation of the medical evidence,
19 credibility and RFC determinations, and failure to follow the court's
20 remand order.    (Ct. Rec. 19 at 41-43, 44-73.)    The Commissioner
21 responds that the decision should be affirmed because it is free of
22 legal error and supported by substantial evidence.    (Ct. Rec. 26 at
23 32).

24                              **DISCUSSION**

25 **A.    Weighing medical evidence**

26    Plaintiff alleges the ALJ erred in assessing the medical
27 evidence, apparently by failing to find her spinal impairment, knee
28 impairment, and headaches severe at step two, failing to find her

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

impairments met or medically equaled a Listing impairment at step three, and in assessing her RFC.

Physical Impairments

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.   20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F.2d 341, 345 (9th Cr. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).  In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989).  Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

1        An impairment or combination of impairments may be found "not
2   severe *only if* the evidence establishes a slight abnormality that has
3   no more than a minimal effect on an individual's ability to work."
4   *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005) (citing *Smolen*
5   *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*,
6   841 F.2d 303, 306 (9th Cir. 1988).   If an adjudicator is unable to
7   determine clearly the effect of an impairment or combination of
8   impairments on the individual's ability to do basic work activities,
9   the sequential evaluation should not end with the not severe
10  evaluation step.   S.S.R. No. 85-28 (1985).   Step two, then, is "a de
11  minimus screening device [used] to dispose of groundless claims,"
12  *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a
13  medically severe impairment or combination of impairments only when
14  his conclusion is "clearly established by medical evidence."  S.S.R.
15  85-28.   The question on review is whether the ALJ had substantial
16  evidence to find that the medical evidence clearly established that
17  the claimant did not have a medically severe impairment or combination
18  of impairments.  *Webb*, 433 F.3d at 687; *see also Yuckert*, 841 F.2d at
19  306.

20       With respect to physical limitations, Plaintiff contends that the
21  ALJ erred by failing to give legitimate reasons for rejecting the
22  opinions of treating physicians G. W. Bagby, M.D., Frank Cruz, M.D.,
23  James Perry, M.D., John Rodgers, M.D., Richard Gascoigne, Jr., M.D.,
24  and physical therapist Joel Armstrong.  (Ct. Rec. 19 at 43-56.)

25       The ALJ found Plaintiff's sole severe physical impairment meeting
26  the 12-month durational requirement is asthma, an ailment controlled
27  with medication.   The record reveals that in the year following onset
28  (March 15, 2001), Plaintiff saw medical treatment providers at North

Basin Health Services numerous times. The ALJ is correct that the only chronic condition treated then and later was asthma. *See, e.g.*, 6/12/01 (right knee pain, Tr. 397); 6/27/01 (upper respiratory infection, Tr. 397); 7/16/01 (**asthma** follow up, Tr. 398); 8/2/2001 (sinusitis and bronchitis, Tr. 399); 8/7/2001 (rhinitis, Tr. 399); 9/18/2001 (eczema of the feet, Tr. 400); 9/28/2001 (sinusitis, early bronchitis, Tr. 400); 10/21/2001 (**asthma**, sinusitis, bronchitis, Tr. 400); 1/7/2002 (**asthma**, occasional dizziness and chest pain, insomnia, Tr. 401); 1/11/2002 (**asthma**, heartburn, Tr. 401); 2/12/2002 (heartburn, **asthma**, bronchitis, Tr. 402); 3/9/2002 (conjunctivitis, bronchitis, upper respiratory infection, Tr. 403). On November 15, 2002, Plaintiff told Dr. Bostwick she sees Dr. Cruz for asthma follow up as needed. (Tr. 430.) When Dr. Bostwick asked her if she had any conditions other than depression preventing her from working Plaintiff said, "[t]hat was it." (Tr. 431.) The medical record supports the ALJ's determination that Plaintiff's treatment providers saw her for non-severe, transient conditions; asthma is the only arguably severe physical impairment supported by the medical record.

When weighing the conflicting medical evidence, the ALJ also considered Plaintiff's credibility, and found her less than completely credible. (Tr. 526-527.) Credibility determinations bear on the evaluation of medical evidence when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). In *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002), the court held when an ALJ finds the claimant's testimony as to the severity of pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit

1  claimant's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th

2  Cir. 1991) (en banc).

3      While the ALJ cannot disregard a claimant's subjective complaints

4  regarding the severity of his or her symptoms solely because there is

5  a lack of objective medical evidence to support the testimony, there

6  must be some objective medical evidence of an impairment for the time

7  at issue.  However, the lack of objective medical evidence is just one

8  factor considered by the Commissioner.  *Id.* at 345.  The following

9  factors  may  be  considered:  (1)  the  claimant's  reputation  for

10  truthfulness;  (2)  inconsistencies  in  the  claimant's  testimony  or

11  between  his  testimony  and  his  conduct;  (3)  claimant's  daily  living

12  activities;  (4)  claimant's  work  record;  and  (5)  testimony  from

13  physicians  or  third  parties  concerning  the  nature,  severity,  and

14  effect of claimant's condition.  *Thomas*, 278 F.3d at 958.

15      Once there is evidence of a medically determinable impairment

16  likely to cause an alleged symptom, the ALJ must provide specific and

17  cogent  reasons  for  rejecting  a  claimant's  subjective  complaints.

18  *Bunnell*, 947 F.2d at 346.  In the absence of affirmative evidence of

19  malingering,  the  ALJ's  reasons  must  be  "clear  and  convincing."

20  *Lingenfelter  v.  Astrue*,  504  F.3d  1028,  1038–39  (9th  Cir.  2007);

21  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169

22  F.3d at 599.  The ALJ "must specifically identify the testimony she or

23  he finds not to be credible and must explain what evidence undermines

24  the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

25  2001)(citation omitted).

26      There is no clear evidence of malingering, thus the adjudicator's

27  credibility determination must be supported by "clear and convincing"

28  reasons.  ALJ Reed gave several reasons for finding Plaintiff less

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 9

1  than completely credible, and for her assessment of the medical

2  evidence:

3      After considering the evidence of record, the
    undersigned finds that the claimant's medically determinable

4      impairments could reasonably be expected to produce the
    alleged symptoms,[1] but that the claimant's statements

5      concerning the intensity, persistence and limiting effects
    of these symptoms are not entirely credible.

6

7      . . .

8      . . . The undersigned finds that the claimant's
    statements are not credible. Many of the claimant's

9      allegations are not consistent with the medical record nor
    is there a medically determinable impairment which would

10     provide a basis for the symptoms. The claimant testified
    that she sometimes blacks out, but there is no medically

11     determinable impairment to support this claim and in her
    medical records there was only one reference to dizziness in

12     June 2006, but with no objective findings. Exhibit 40F. She
    complained of tingling and numbness in her hands, but her

13     neurological exams were normal and x-rays were negative and
    she specifically denied tingling or weakness in her arms in

14     May 2006. Exhibit 40F/19,/20 and /26. Also see scans
    indicating no abnormalities in Exhibit 38F. Also see other

15     references in Exhibit 40F indicating normal gait, strength
    and reflexes. In Exhibit 40F/7 she denied any neurological

16     deficits. In May 2001 there was a reference to knee pain
    and she had a short round of physical therapy where she did

17     well and met her treatment goals. Exhibit 36F. More recent
    records do not reflect this as an ongoing complaint and she

18     has been reported to have normal gait and strength. Exhibit
    40F. No inflammation has been noted with respect to her

19     knees. Exhibit 40F/10.

20     . . .

21     . . . The claimant said she is depressed and cries a
    lot, sometimes daily, but there is no evidence of this in

22     the current medical records. The fact that claimant alleges
    impairments that she didn't find significant enough to

23     report to her doctors, makes it difficult to accept her
    assertions that these conditions are disabling. The

24     claimant has also described daily activities which are not

25     [1] Given the ALJ's step two analysis, it is clear that she refers

26  to  asthma,  and  depressive  and  personality  disorders,  as  the

27  determinable impairments which are expected to produce symptoms, but

28  not to the extent Plaintiff has described.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

> limited to the extent one would expect, given the complaints
> of disabling symptoms and limitations. . . . the claimant
> has reported that she takes care of her [13-month old]
> child, she feeds him, bathes him, changes his diapers, picks
> up clothes, plays with him in the yard, carries the laundry,
> and sweeps and mops. Moreover, the record includes evidence
> strongly suggesting that the claimant has exaggerated
> symptoms and limitations. Exhibit 10F.

(Tr. 526-527.) With respect to activities, the ALJ's incorporated prior decision notes Plaintiff's ability in February and March of 2001 to complete an eight-to-nine week Project Self-Sufficiency program at a community college. (Tr. 23, 26, 53.) The program lasted eight hours a day, five days a week. (Tr. 23.)

The ALJ appropriately relied on evidence of symptom exaggeration when she weighed credibility, citing Exhibit 10F, Plaintiff's April 25, 2001, MMPI-2 profile:

> This individual appears to operate with poor psychological
> efficiency because of a very strong concern for her health,
> evidenced by many diverse physical complaints. Her symptoms
> are vague and are not likely to be fully explained by actual
> organic causes. She may react to stress by whining and
> complaining about her health, and she seems generally
> unhappy and pessimistic about life. She may be obtaining
> secondary gain through the attention or services she
> receives for the complaints.

(Exhibit 10F at Tr. 332, Mark Mays, Ph.D.)

The ALJ's reliance on Plaintiff's inconsistent statements is also convincing and supported by the record. Plaintiff has indicated she has eight half siblings; at other times, fourteen. (Tr. 24, referring to Tr. 433 and Tr. 271.) Plaintiff testified she quit working at the office and veterinary clinics because "some of the people had serious – it seemed like attitudes towards me." (First hearing, September 19, 2002 at Tr. 60-61.) The ALJ notes that elsewhere, Plaintiff reported leaving the veterinary clinic (1) voluntarily due to pregnancy; (2) voluntarily due to training hours ending; and (3) involuntarily as she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1   was laid off due to absences secondary to back pain while pregnant.
2   (Tr. 19, 26 referring to Exhibits 2F at Tr. 175, 6F, 26F).

3       As noted, when presented with conflicting medical opinions, the
4   ALJ must determine credibility and resolve the conflict. *Matney v.*
5   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ's reasons for
6   finding Plaintiff less than fully credible are clear and convincing.
7   The inconsistencies in Plaintiff's statements, the inconsistencies
8   between her statements and her conduct, and the extent of Plaintiff's
9   daily activities all fully support the ALJ's finding. *See Thomas v.*
10  *Barnhart*, 278 F.3d at 958-959 (9th Cir. 2002), *citing Light v. social*
11  *Security Administration,* 119 F.3d 789, 792 (9th Cir. 1997).

12      The ALJ rejected Dr. Bagby's 1998 opinion because it predated
13  onset by about three years, and he opined Plaintiff could work at the
14  light level for six months (in part due to post partum status),
15  thereby, even if credited, failing to meet the Act's 12-month
16  durational requirement. *See* 42 U.S.C. § 1382c(a)(3)(A).  (Tr. 527,
17  referring to Tr. 218-222.)  Both are specific and legitimate reasons
18  supported the record.

19      The ALJ found Plaintiff treated intermittently for complaints of
20  knee, neck, and back pain, and concluded that none of Plaintiff's
21  physical complaints, except asthma, met the 12-month durational
22  requirement.  (Tr. 526.)

23      The ALJ rejected treating doctors's opinions based on Plaintiff's
24  unreliable self-reports.  The ALJ notes with respect to headaches, Dr.
25  Gascoigne appears to base his assessment on Plaintiff's unreliable
26  self-reported symptoms. For example, he notes on March 31, 2004: "She
27  has had a migraine constantly for several weeks." (Tr. 749; *see also*
28  Tr. 743, 748, headache assessed based on self-report.)  Two months

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

later, after a trial of medication, Dr. Gascoigne's notes show no headache complaint. (Tr. 750.) Other medical records indicate that Dr. Gascoigne treated Plaintiff for non-severe impairments such as cough and upper respiratory infection. (Tr. 465, 754.) The ALJ noted that at times Plaintiff's headaches have been ascribed to a rebound reaction to non-prescription pain medication. (Tr. 527, referring to Exhibit 40F at Tr. 758.)

The ALJ rejected the opinions of treating doctors which were not supported by medical evidence consisting of signs, symptoms and laboratory findings. (Tr. 526.) The ALJ points out that Plaintiff's neurological and musculoskeletal exams were normal during the relevant time frame. (Tr. 527, referring to Exhibit 40F/6, /7 and /10; 40F/19.)

Treating physician James Perry, M.D., diagnosed right patellar subluxation at the date of onset and planned to treat it exclusively with physical therapy. He opined no imaging, injections or surgery was warranted. (Tr. 310-311.) Plaintiff attended physical therapy sporadically, as noted by the ALJ, despite complaints of disabling pain: for one month in 2001 (knee pain), and two appointments in September of 2002 (back and neck pain). (Tr. 527, referring to Exhibits 8F, 15F, 25F, 31F/4, 36F, 38F, and 40F/19-20.) The amount of treatment is "an important indicator of the intensity and persistence of [Plaintiff's] symptoms," C.F.R. § 416.929 (c)(3). With respect to physical therapist Joel Armstrong, the ALJ correctly observes that he did not offer an opinion of Plaintiff's physical capacity, opined she met all treatment goals after a month of therapy (March 19 to April 16, 2001), and thereafter saw her twice in September of 2002. (Tr. 527 n.4.)

To support a decision to reject the opinion of a treating

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

physician, in addition to the testimony of a non-examining medical advisor, the ALJ must have other evidence to support the decision, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-752 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1042-1043 (9th Cir. 1995).

The ALJ appropriately weighed the medical evidence. Substantial evidence supports the ALJ's step two finding that Plaintiff failed to meet her burden of establishing that she suffered from any severe physical impairment other than asthma. At step three Plaintiff alleges her impairments meet or medically equal the requirements of a musculoskeletal disorder, but the evidence does not support the argument. The ALJ found Plaintiff did not suffer from any severe physical impairment other than asthma, within the meaning of the regulations, for a twelve-month period during the relevant time frame. The record supports this determination. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (holding that, if the evidence reasonably supports a social security decision, the court must uphold the decision and may not substitute its own judgment for the agency's).

Mental impairments

Plaintiff alleges the ALJ erred by rejecting the opinions of her mental health treatment providers in favor of the opinions rendered by medical expert R. Thomas McKnight, Ph.D., and examining psychologist Allen Bostwick, Ph.D. (Ct. Rec. 19 at 56-64.)

As noted, in addition to the testimony of a non-examining medical advisor, the ALJ must have other evidence to support a decision to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

reject the opinion of a treating physician, such as laboratory test results, testimony from the claimant that is inconsistent with the treating physician's opinion, and, as here, contrary reports from examining physicians. *See Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043.

The ALJ partially credited the opinion of examining psychologist Mark Mays, Ph.D. (that Plaintiff suffers from a personality disorder) because the diagnosis is consistent with other evidence, as are his limited test results. (Tr. 528-529.) ALJ Reed gave less weight to the opinion of Averly Nelson, M.D., because Dr. Nelson saw Plaintiff "on a few occasions," noted she was tearful (due to her child's medical problems), and Dr. Nelson did not specifically evaluate cognitive functioning. (Tr. 528, 530, referring to Tr. 234-237.) The length of treatment (3 occasions over a 3-month period) and the lack of objective testing are both specific and legitimate reasons to discount Dr. Nelson's opinion.

The ALJ rejected the severe limitations assessed by counselors Majil Fausel, M.A., Lynne Guhlke, LMHC,[2] and Robert Rich, Ph.D., clinical social worker, because: (1) severe cognitive deficits assessed by counselor Guhlke were inconsistent with the results of objective testing administered by examining psychologist Allen Bostwick, Ph.D., and with counselor Guhlke's assessed GAF of 65;[3] (2)

---

[2] Lynne Guhlke, M.Ed., initially saw Plaintiff over a six-week period for a twelve-hour "parenting psycho-education" course related to pending dependency proceedings. (Tr. 213.)

[3] A Global Assessment of Functioning (GAF) score of 61-70 indicates some mild symptoms, *e.g.*, depressed mood and mild insomnia)

counselor Fausel's opinion was internally inconsistent, she gave no basis for the limits assessed, and the limitations are inconsistent with cognitive testing;[4] and (3) clinical social worker Rich's opinion (i.e., an assessment on September 15, 2002, of marked mental impairments in seven areas (Tr. 415-416)), is rejected for the same reasons as counselor Fausel's. (Tr. 528-532.) ALJ Reed noted that Dr. Bostwick performed the most detailed cognitive testing, which revealed average intelligence, and no severe impairments in memory or other cognitive function as Plaintiff has alleged. The ALJ points out that Dr. McKnight reviewed the entire record and offered a longitudinal opinion:

> [He] was able to review the claimant's entire medical record in forming his opinion. Dr. McKnight noted that the records indicate that the claimant has a personality disorder with some associated depression and anxiety. He testified

_____

or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

[4]On September 12, 2002, Counselor Fausel assessed an extreme limitation in the ability to maintain attention and concentration for extended periods. (Tr. 417.) On March 19, 2003, she assessed four marked limitations, including in the ability to perform at a consistent pace. (Tr. 452.) On November 15, 2002 (two months after Ms. Fausel's earlier assessment), examining psychologist Dr. Bostwick opined Plaintiff showed moderately good pace and generally good persistence on all procedures he administered; cognitively, Plaintiff was "performing well." (Tr. 436, 440.)

that he agreed with the assessment done by Allen Bostwick, Ph.D., which is also accorded great weight, who did a thorough psychological examination and testing of the claimant. He noted that Dr. Bostwick found no evidence of problems with memory or bipolar disorder, and he gave the claimant a GAF of 55-65, which is consistent with mild symptoms. Dr. Bostwick noted that the claimant was independent in all her activities of daily living, household chores, and child care. He opined that the claimant's primary psychological condition was her personality disorder and her hypochondriacal tendencies were secondary to her personality disorder. Exhibit 26F.

Dr. McKnight noted that Drs. Mays and Bostwick both diagnosed a personality disorder and a depressive disorder, nos, with the personality disorder being the primary factor. He pointed out that the record did not reflect a bipolar disorder and none was diagnosed by Drs. Bostwick, Nelson, or Mays. Dr. McKnight persuasively pointed out that there was no basis for the limitations assessed by Counselor Guhlke. Exhibit 34F. The testing by Dr. Bostwick did not reveal such severe cognitive defects and there is nothing in the chart notes of Counselor Guhlke to support the limitations assessed. In addition, the global assessment of functioning was 65, which would indicate mild deficits, inconsistent with the ratings assessed in Exhibits 34F/1-2. Dr. McKnight also noted that there was no basis for the limits assessed by Counselor Fausel in Exhibits 22F and 28F.

(Tr. 528.)

The ALJ considered Plaintiff's credibility when she weighed the conflicting evidence of mental impairment. Contrary to Plaintiff's argument, the ALJ did not simply adopt Dr. McKnight's opinion and arbitrarily reject the assessments of treating sources. She discounted some mental health provider opinions based on (1) unreliable self-reporting; (2) inconsistency with Plaintiff's daily activities, including the ability to attend a college course 8 hours a day, 5 days a week, for 8-9 weeks just before onset; and (3) inconsistency with objective test results.

The ALJ's assessment of the mental health evidence is based on substantial evidence and without legal error.

**B.    Remand Order**

Plaintiff alleges the ALJ failed to follow the remand order requiring the ALJ to give consideration to the treating, examining and consulting source opinions. (Ct. Rec. 19 at 44.) The ALJ incorporated the prior decision by reference.  (Tr. 521.)  Because additional evidence was presented at the most recent hearing, the ALJ correctly found that a new determination was warranted.  (Tr. 532.)  As noted herein, the ALJ's current assessment of the evidence is based on substantial evidence and free of legal error.  Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED.**

DATED September 30, 2008.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE